In re James Park GRESHAM, Debtor.

HORIZON FINANCIAL, F.A., Plaintiff,

v.

James Park GRESHAM, Defendant.

J. Phillip SCOTT, Plaintiff,

v.

James Park GRESHAM, Defendant.

Bankruptcy No. 88–01945–BKC–TCB.

Adv. Nos. 88–0466–BKC–TCB–A, 88–0467–BKC–TCB–A.

United States Bankruptcy Court, S.D. Florida.

Dec. 22, 1988.

Cynthia I. Chiefa, Katz, Barron, Squitero & Faust, Miami, Fla., Gary Lightman, Klehr, Harrison, et al. Philadelphia, Pa., for Horizon Financial.

Kenneth S. Rappaport, P.A., Boca Raton, Fla., for plaintiff Scott.

Francis T. Ryan, Michael J. Ryan, Ryan & Ryan Legal Associates, P.A., Riviera Beach, Fla., for defendant debtor.

Daniel L. Bakst, Trustee.

## MEMORANDUM DECISION

### THOMAS C. BRITTON, Chief Judge.

These two adversary complaints, filed by different creditors represented by different counsel, opposed this debtor's discharge and, alternatively, sought exception from discharge. Both were scheduled to be tried November 1.

At trial, the plaintiff in No. 88–0467 voluntarily dismissed his counts opposing discharge. Because denial of discharge moots exception from discharge, only No. 88–0466 was tried and it was tried solely on the count which opposed discharge.

### *Plaintiff's Standing*

The threshold issue is whether the plaintiff, Horizon Financial, has standing under 11 U.S.C. § 727(c)(1) which permits only the trustee or "a creditor" to object to discharge.

Plaintiff's standing as a creditor claiming nearly $18 million, rests upon the debtor's guaranties of plaintiff's loans to a corporation, Brokers South. The last of the loans was made in July 1986.

The debtor relies upon a Mutual Release Agreement of September 4, 1987. (CP 14 at 1; Ex. G). This instrument releases all of plaintiff's claims against the debtor. Unless, therefore, plaintiff can avoid the release, plaintiff lacks standing to maintain this action.

Plaintiff, anticipating this defense, has alleged that the release was fraudulently induced by a false representation, to wit: [1]

"24. Gresham and others represented to Horizon that as part of the Restructuring Agreement, Gresham would be removed and replaced as president of Brokers, and that Gresham would no longer be involved in any manner in Brokers' affairs or operations after September 4, 1987....

"26. At the time said representations were made, Gresham knew or should have known that he intended to and in fact continued to be involved in the management of Brokers' affairs and operations.

"27. Horizon reasonably relied upon the aforesaid false representations, to its detriment, in executing a Release to Gresham." (CP 1, ¶¶ 24, 26 and 27).

■ Although a representation about something in the future does not ordinarily constitute actionable fraud, an exception is recognized where a party, by making a promise without any intention to perform it, induces another to enter into a transaction. 27 *Fla.Jur.2d*, Fraud and Deceit § 25.[2]

### *Facts Pertinent To Attempted Avoidance Of The Release*

■ At one point the debtor had been the successful owner and operator of his

---

**1.** Since the only fraud pertinent here is fraud which is claimed to have induced plaintiff to release the debtor from liability, and since fraud must always be pleaded with particularity (Rule 9(b) Fed.R.Civ.P. made applicable here by B.R. 7009), I disregard plaintiff's argument that other conduct of the debtor was fraudulent.

**2.** The alleged fraudulent inducement appears to have occurred in Pennsylvania and the Mutual Release stipulates that it will be governed by the law of that State. In citing Florida law, therefore, I merely assume that the legal principles discussed here are the same in both States. Any deviation may be brought to my attention on rehearing.

own used car retail sales business. However, by early 1985 following financial reverses and a divorce, debtor was employed as president of Brokers South, a Florida used car outlet, and was living with its owner, Sandra Chitwood. Chitwood whose ex-husband had been in the same business, had previously worked for the debtor in his business.

At that point, plaintiff, a large Philadelphia savings and loan association, contracted with Brokers South to assist in the liquidation of plaintiff's large inventory of Florida automobiles and accounts receivable.

There were two subsequent similar contracts, in December 1985 and July 1986.

In September 1986 discrepancies relating to the accounts receivable led to an audit, which in turn led to a September 1987 Restructuring Agreement between plaintiff and Brokers South. The Agreement, which restructured the debt resulting from the earlier agreements, resulted in a reduction of both the principal indebtedness and the interest owed by Brokers South to the plaintiff.

The documentation of each contract was prepared by plaintiff and was detailed and voluminous. Although Chitwood orally expressed willingness to and did subsequently remove the debtor as president of Brokers South, the Agreement, which contains a standard integration clause, contains no such requirement. *There is no evidence that the debtor ever was asked to or agreed to perform no further services for Brokers South.*

The mutual releases were also requested by and prepared by plaintiff and were executed incident to and as a part of the Restructuring Agreement. The release of the debtor (Ex. H) identifies him as the former president of Brokers South, but contains no suggestion that its execution by plaintiff was conditioned upon that fact.

After his discharge as president, the debtor continued to work for Brokers South as a consultant in management and in collections until the Spring of 1988. Although plaintiff was aware of the debtor's continued services to Brokers South, it never indicated any disapproval at any time before raising the point in this adversary proceeding a year later.

Plaintiff continued to do business with Brokers South, taking no action to claim any default of any nature until very recently, when it filed suit against the corporation in Georgia. It has never rescinded the Agreement nor has it ever offered restoration of the benefits it received under the Agreement.[3]

I find that the release given by plaintiff to the debtor was *not* induced by any representation that Gresham would no longer be involved in any manner in the operation of Brokers South after September 4, 1987. No such representation was made by anyone, much less by the debtor or anyone acting for him with a fraudulent intent to induce plaintiff's execution of the debtor's release.

Plaintiff did not in fact rely upon the expectation that the debtor would have no further connection with Brokers South. But even if it had, it acquiesced in his subsequent employment as a consultant and waived any possible objection it might have had.

### Conclusion

Plaintiff has failed to carry its burden of proving the ground it has alleged in avoidance of the release.[4]

It follows that plaintiff has no claim against the debtor and, therefore, no standing to challenge the debtor's discharge. The standing required for plaintiff's count

---

3. In addition to the releases plaintiff received, it also received from Brokers South $850,000 plus $4.4 million of accounts receivable.

4. In Florida, the proof of fraud required to avoid the legal effect of a release, must be "clear, cogent, substantial, and convincing." 10 *Fla.Jur.2d*, Compromise, Accord, and Release

§ 44. This is consistent with the general principle that fraud must be proved by clear and convincing evidence. However, plaintiff has failed to prove fraud in the inducement of the release which is at issue here, even if the required standard of proof is a simple preponderance of the evidence.

seeking exception from discharge, § 523(c), is identical to that required to oppose discharge. Therefore, the complaint in No. 88–0466 is dismissed with prejudice.

*The complaint in No. 88–0467, filed by J.P. Scott, is rescheduled for trial on Thursday January 12, 1989 at 9:30 a.m. in courtroom 1406 at 51 SW 1st Avenue, Miami, Florida* with respect to the relief sought under § 523.

DONE and ORDERED.