In re George R. FLONNES, Debtor.

**The NORWICH SAVINGS
SOCIETY, Plaintiff,**

v.

George R. FLONNES, Defendant.

Bankruptcy No. 2–93–04221.
Adv. No. 2–94–2375.

United States Bankruptcy Court,
D. Connecticut.

May 30, 1995.

Joel M. Grafstein and Lawrence R. Farber, Grafstein & Associates, Farmington, CT, for plaintiff.

George R. Flonnes, Pomfret, CT, pro se defendant.

*MEMORANDUM OF DECISION*

ROBERT L. KRECHEVSKY, Chief Judge.

### I.

The matter before the court is a complaint brought by the plaintiff, The Norwich Savings Society, objecting to the granting of a discharge to George R. Flonnes, the debtor-defendant.[1] The plaintiff's principal argument is that the debtor, with intent to hinder,

---

1. The complaint also contains allegations as to nondischargeability of debts under § 523, but the plaintiff announced at the start of the hearing that it elected to proceed only on the objection to discharge.

delay, or defraud a creditor or an officer of the estate, transferred property of the estate after the date of the filing of the debtor's petition. *See* Code § 727(a)(2)(B). The debtor, appearing pro se, contends that the plaintiff lacks standing as a creditor to pursue an objection to discharge or, if standing is established, that the property asserted transferred was not property of the estate.

## II.

### BACKGROUND

The debtor, in 1988, was the owner of a 28.2–acre parcel of land located on Route 44 and Wolf Den Road, Pomfret, Connecticut (the property) on which a facility known as The Inn at Gwyn Careg (the Inn) was located. On August 19, 1988, the debtor, to secure a $630,000 loan, granted the plaintiff both a first mortgage on the property and a first security interest in the personal property used to operate the Inn. The plaintiff properly perfected the mortgage deed and the security agreement.

After payments on the loan became delinquent, the plaintiff started a mortgage foreclosure action in state court, and a judgment of strict foreclosure entered on July 16, 1993. The debtor, on August 16, 1993, and prior to the running of the law days established by the foreclosure judgment, filed a pro se Chapter 11 petition. The plaintiff responded with a motion for relief from stay to continue in state court with its foreclosure action. This court, after a contested hearing, on September 15, 1993 granted the plaintiff's motion. The debtor failed to appear at meetings convened by the United States trustee (UST) pursuant to § 341(a),[2] and the court, upon motion of the UST, on October 19, 1993 dismissed the debtor's case.

The debtor filed a second pro se Chapter 11 petition on November 8, 1993, again prior to the running of the state court reestablished law days. The plaintiff moved for relief from stay, and the court, by order dated November 30, 1993, authorized the plaintiff to continue with the foreclosure action. The court, on motion of the UST alleging the debtor had failed to attend § 341(a) meetings and to file proper schedules, converted the Chapter 11 case to one under Chapter 7 on February 24, 1994. Neal Ossen, Esq. (Ossen) became the Chapter 7 trustee.

The plaintiff, in the state court foreclosure action, secured another judgment setting new law days, and when no party redeemed, the plaintiff, by operation of law, acquired title to the property. The debtor's brief indicates this occurred on June 23, 1994. The plaintiff did not seek a deficiency judgment in the foreclosure action. The foreclosure judgment which originally entered on July 6, 1993 had found the debt to be $831,942 and the value of the property to be $840,000.

The plaintiff, on April 18, 1994, filed a motion for relief from stay in order to exercise its rights under the security agreement with respect to the personal property located at the Inn. The motion alleged that the debt due the plaintiff totaled $877,637.52 and that the debtor's "real property which is additional collateral for the Bank's obligation has an appraised value in the amount of $840,000...." Motion ¶ 18. Ossen did not contest this motion, and the court, on May 4, 1994, authorized the plaintiff to enforce its rights under the security agreement. At some point not disclosed in the record, the plaintiff took "title to the personal property by way of a private sale of personal property under its rights as a secured creditor in accordance with Uniform Commercial Code (Title 42a of the Connecticut General Statutes)." Complaint ¶ 14, admitted by the debtor.

At a continued § 341(a) meeting held on June 30, 1994, Ossen examined the debtor concerning property of the estate and specifically about the whereabouts of a 60 × 120 foot, white party tent (the tent). The debtor

---

**2.** Section 341(a) provides:

Within a reasonable time after the order for relief in a case under this title, the United States trustee shall convene and preside at a meeting of creditors.

Section 343 mandates debtors appear at the § 341(a) meetings to be examined under oath.

refused to answer without the assistance of counsel. Ossen continued the meeting to July 11, 1994 to allow the debtor time to retain counsel. The debtor appeared at the July 11, 1994 meeting without counsel, and when questioned about the location of the tent and other estate personal property, the debtor refused to answer on the asserted ground of "self incrimination."

The plaintiff filed its complaint on August 30, 1994, objecting to the debtor's discharge. The plaintiff alleged in the complaint that the debt due from the debtor totaled $895,743.88 on the date of filing of the debtor's petition, and that the realty and personal property to which the plaintiff had taken title under its mortgage and security agreement had a total value of $864,021. At trial, Peter Lange (Lange), a commercial loan officer of the plaintiff, testified that the plaintiff had subsequently sold the property for $400,000.

Lange testified that he had periodically visited the Inn in connection with his duties to monitor the debtor's loan and that the debtor had always referred to the tent, used at large wedding receptions, as being the debtor's property. Lange testified that when he visited the property after the plaintiff received relief from stay to enforce the security agreement, the tent was no longer in sight. The plaintiff introduced into evidence an advertisement in the March 30, 1994 weekly edition of a local newspaper which listed the tent for sale for $9,500, with an alleged original purchase price of $25,000, and stated a phone number for interested parties to call. The debtor acknowledged the phone number in the advertisement to be his at the Inn, but denied it was he who sold the tent. He claimed the tent belonged to his mother, who lived in New Britain, Connecticut, and that she had sold the tent and retained $7,500 received from the sale. The debtor conceded that during the present bankruptcy case he had permitted other items of personalty located at the Inn to be taken by third persons, on the ground that such items belonged to them.

Following the hearing, both parties submitted memoranda to set forth their arguments. The debtor contends that the plaintiff lacks standing to bring the objection to discharge because the plaintiff lost its status as a creditor of the debtor when, postpetition, it completed its mortgage foreclosure without obtaining a deficiency judgment in state court. The debtor further argues that the plaintiff has not established fraud on the debtor's part in the transfer of any property of the estate.

## III.

## DISCUSSION
### A.
### Standing of the Plaintiff

■ Code § 727(c)(1) provides that "[t]he trustee, a creditor, or the United States trustee may object to the granting of a discharge...." The Code defines "creditor" as an "entity that has a claim against the debtor that arose at the time of or before the order for relief concerning the debtor." § 101(10). Claim is defined in § 101(5) as follows:

(A) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or

(B) right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured....

There can be no question that the plaintiff at the commencement of the debtor's case held a claim against and was a creditor of the debtor. The issue becomes whether the plaintiff lost that status and the right to object to the debtor's discharge when, during the case, the plaintiff executed upon personal property under its security agreement and foreclosed upon real property without establishing in state court a right to a deficiency judgment.

Conn.Gen.Stat. § 49–1 provides that "[t]he foreclosure of a mortgage is a bar to any further action upon the mortgage debt, note or obligation against the person or persons who are liable for the payment thereof who are made parties to the foreclosure...." If a party believes that the collateral foreclosed

upon is inadequate to satisfy the debt, Conn. Gen.Stat. § 49–14 provides such party may "within 30 days after the time limited for redemption has expired ... file a motion seeking a deficiency judgment." It is settled Connecticut law that "[u]nder General Statutes § 49–1, a judgment of strict foreclosure extinguishes all rights of the foreclosing mortgagee on the underlying note, except those enforceable through the use of the deficiency judgment procedure delineated in General Statutes § 49–14." *First Bank v. Simpson*, 199 Conn. 368, 370, 507 A.2d 997 (1986). "Such a deficiency judgment, in light of § 49–1, is, therefore, the only available means of satisfying a mortgage debt when the security is inadequate to make the foreclosing plaintiff whole." *Id.* at 371, 507 A.2d 997. (citation omitted).

■ The court believes that the plaintiff, having qualified as a creditor at the commencement of the case under § 727(c)(1), did not lose such standing by not subsequently securing a deficiency judgment on the underlying note during the progress of the case. Conn.Gen.Stat. § 49–1 by its terms, states simply that a mortgage foreclosure acts as "a bar to any further action upon the mortgage debt, note or obligation...." This provision does not extinguish the underlying debt, but only precludes action to enforce it. Reason dictates that when, as here, a creditor believes it has the basis for an objection to discharge, the creditor's possible loss of its right to share in a distribution of property of the estate does not override the clear language of § 727(c)(1) granting the creditor standing to object.

### B.

*The Debtor's Right To A Discharge*

■ Section 727(a)(2)(B) provides:
(a) The court shall grant the debtor a discharge unless—

    . . . .

(2) the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed—

    . . . .

(B) property of the estate, after the date of the filing of the petition....

■ Fed.R.Bankr.P. 4005 states that "[a]t the trial on a complaint objecting to a discharge, the plaintiff has the burden of proving the objection." The standard of proof is the preponderance of the evidence. *Montey Corporation v. Maletta (In re Maletta)*, 159 B.R. 108, 111 (Bankr.D.Conn.1993).

"Ascertaining whether a Debtor acted with fraudulent intent is difficult because, ordinarily, the Debtor is the only person able to testify directly regarding his intent and a debtor is unlikely to state that his intent was fraudulent. Therefore, fraudulent intent is rarely susceptible to direct proof, but may be deduced from the facts and circumstances of a case." *Minsky v. Silverstein (In re Silverstein)*, 151 B.R. 657, 661 (Bankr.E.D.N.Y. 1993) (citations omitted). "[I]ntent may be established by circumstantial evidence, or by inferences drawn from a course of conduct." *In re Adeeb*, 787 F.2d 1339, 1343 (9th Cir. 1986).

The court credits Lange's testimony that the tent was estate property and covered by the plaintiff's security agreement. The debtor produced no evidence to support his statement that his mother "owned" the tent. The debtor had no authority to turn the tent over to his mother, in any event, while the personal property located at the Inn was in Ossen's custody, as the Chapter 7 trustee. The court concludes that the debtor is not entitled to a discharge because he transferred property of the estate after the date of the filing of the petition with intent to hinder, delay, or defraud the plaintiff or the estate trustee.

### IV.

### CONCLUSION

The court concludes that the plaintiff has carried its burden of proof in establishing the conditions contained in § 727(a)(2)(B). The court accordingly sustains the plaintiff's objection to the granting of a discharge to the

debtor and will enter a judgment denying the debtor a discharge.