In re Gregory W. **BAGEN**, d/b/a Gregory W. Bagen, Attorney at Law, and Carol K. Bagen, Debtors.

**PUTNAM COUNTY SAVINGS BANK, Plaintiff,**

v.

Gregory W. **BAGEN** and Carol K. Bagen, Defendants.

**Bankruptcy No. 92–32517.
Adv. No. 93–7004.**

United States Bankruptcy Court, S.D. New York.

Aug. 7, 1995.

McCabe & Mack by Richard R. DuVall, Poughkeepsie, NY, for movant.

Michael R. Gottlieb, Middletown, NY, for respondent.

## DECISION ON MOTION FOR SUMMARY JUDGMENT—CONSIDERATION OF CREDITOR STATUS AND DISCRETIONARY ABSTENTION

JEREMIAH E. BERK, Bankruptcy Judge.

### INTRODUCTION

The Debtors herein filed for bankruptcy protection on October 22, 1992. Plaintiff commenced the instant adversary proceeding on February 2, 1993 objecting to the Debtors' discharge and the dischargeability of their alleged indebtedness. Debtors have moved for summary judgment contending that the Plaintiff is not a creditor and, therefore, lacks the requisite standing to object to discharge and dischargeability. The motion raises the issue of whether an entity's claim must be enforceable under state law for creditor status to arise in bankruptcy.[1]

### FACTS

Gregory W. Bagen and Carol K. Bagen (Debtors) executed and delivered to Putnam County Savings Bank (PCSB) a promissory note for $250,000 on February 8, 1989. The note was secured by a second mortgage on a parcel of real property owned by the Debtors and located in the Town of South East, Putnam County, New York (the "Property").

On December 3, 1990, the Debtors transferred, for a nominal sum, all of their right, title, and interest in the Property to Allview Estates, Inc. (Allview). Allview, which was owned and controlled by the Debtors, acquired title to the Property subject to the mortgage. After the Debtors defaulted, PCSB commenced an action on the note against the Debtors in the New York Supreme Court on April 11, 1991. That court entered an order in November 1991 granting PCSB judgment against the Debtors in the sum of $250,000 plus interest and late charges. On October 9, 1992, a judgment, based on the November 1991 order, was entered against the Debtors for $311,677.84 (the "Money Judgment"). Shortly thereafter, on October 22, 1992, the Debtors filed for bankruptcy relief under chapter 7 of the Bankruptcy Code (the "Code"). The Debtors listed PCSB as a secured creditor for $311,677.84 on their schedule of liabilities.[2]

PCSB subsequently moved in the New York State Supreme Court, pursuant to New York Real Property Actions and Proceedings

---

1. Subject matter jurisdiction over this proceeding exists pursuant to 28 U.S.C. §§ 1334(b), 157(a) and the "Standing Order of Referral of Cases to Bankruptcy Judges of the Southern District of New York" dated July 10, 1984 (Ward, Acting C.J.).

2. Although scheduled as a creditor, PCSB has not filed a proof of claim.

Law (RPAPL) section 1301(3), for leave to foreclose. Leave was granted on January 25, 1993.

■ The foreclosure action was commenced by PCSB on January 29, 1993. Only Allview and the People of the State of New York were named as defendants.[3] The Debtors were not named in the foreclosure action, they were not served and they did not appear. The foreclosure action proceeded unopposed, and on April 27, 1993 a judgment of foreclosure and sale was rendered. The judgment did not provide for the payment of any deficiency. The Property was sold at a foreclosure sale to PCSB for $1.00, and title was conveyed by delivery of a Referee's Deed to PCSB on June 26, 1993.

At or about the time the foreclosure action was commenced, PCSB commenced this adversary proceeding objecting to the Debtors' discharge pursuant to Code section 727(a) and seeking to except from dischargeability its monetary claim against the Debtors pursuant to Code section 523(a)(2). Debtors here move for summary judgment, arguing that PCSB does not have standing to bring this proceeding. They contend that PCSB's failure to seek a deficiency judgement in the foreclosure action bars it from enforcing the Debtors' obligation under state law and, therefore, PCSB is not a creditor and lacks the requisite standing to bring this action.

### SUMMARY JUDGMENT

A motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure, applicable herein through Federal Rule of Bankruptcy Procedure 7056, shall be granted if there is "no genuine issue as to any material fact." See Fed.R.Civ.Proc. 56; see also Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). Based on the affidavits, admissions

3. The Debtors, as obligors on a mortgage who transferred all their rights in the subject property, including their equity of redemption, were not necessary parties to the foreclosure action since PCSB did not seek a deficiency judgement from the Debtors. See Federal Nat'l Mortg. Ass'n v. Connelly, 84 A.D.2d 805, 444 N.Y.S.2d 147, 147 (1981).

4. Section 727(c)(1) of the Code provides that "[t]he trustee, [or] a creditor ... may object to

on file, and the Stipulated Chronology of Relevant Facts, there would appear to be no genuine issues of material fact. However, for the reasons discussed below, I believe it premature to decide this motion until the issue of creditor status, i.e., the enforceability of PCSB's claim, is resolved by the state foreclosure court.

### DISCUSSION

### 1. Creditor Status

■ A party objecting to a debtor's discharge and dischargeability has standing if that the party is a "creditor" within the meaning of the Code sections 727(c)(1)[4] and 523.[5] Miller v. Boles (In re Boles), 150 B.R. 733, 735 (Bankr.W.D.Mo.1993); Horizon Financial, F.A. v. Gresham (In re Gresham), 95 B.R. 836, 837 (Bankr.S.D.Fla.1988).

The Code defines creditor as an "entity that has a claim against the debtor that arose at the time of or before the order for relief...." 11 U.S.C. § 101(10)(A) (1988) (emphasis added). A "claim" is defined as a "right to payment, whether ... such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured...." 11 U.S.C. § 101(5)(A) (1988) (emphasis added).

■ A "right to payment," and whether an entity is entitled to it, is determined by examining the applicable state substantive law. In re Mandalay Shores Coop. Hous. Ass'n, 54 B.R. 632, 635 (Bankr.M.D.Fla.1984). The Supreme Court has concluded that a right to payment "is nothing more nor less than an enforceable obligation...." Pennsylvania Dep't of Public Welfare v. Davenport, 495 U.S. 552, 559, 110 S.Ct. 2126, 2131, 109 L.Ed.2d 588 (1990). Thus, resolution of the

the granting of a discharge." 11 U.S.C. § 727(c)(1) (1988).

5. Section 523, unlike section 727 of the Bankruptcy Code, does not state who may or may not bring a dischargeability complaint. Federal Rule of Bankruptcy Procedure 4007, however, provides that "[a] debtor or any creditor may file a complaint to obtain a determination of dischargeability of any debt." Fed.R.Bankr.P. 4007(a).

standing issue requires this Court to determine whether under New York law PCSB holds an enforceable claim, or whether its right to payment has been entirely lost.

In *Stanley v. Vahlsing (In re Vahlsing)*, 829 F.2d 565 (5th Cir.1987), a prepetition creditor objected to the debtor's discharge. The bankruptcy court terminated the automatic stay and allowed the alleged creditor to pursue her claim in state court. Although the state court dismissed the claim, the bankruptcy court allowed the objection to discharge proceeding to continue and, eventually, granted the complaint and denied the discharge. After the district court affirmed, the Fifth Circuit Court of Appeals reversed, concluding that the prepetition creditor, who had her claim adjudicated and "finally dismissed" in state court during the bankruptcy case, lost creditor status and, therefore, could not object to a debtor's discharge.

Recently, however, in *Norwich Savs. Society v. Flonnes (In re Flonnes)*, 183 B.R. 37 (Bankr.D.Conn.1995), a bankruptcy court concluded that a creditor did not lose standing to object to the debtor's discharge even though its claim was unenforceable. As in this proceeding, the mortgagee in *Flonnes* held an enforceable claim at the commencement of the bankruptcy case.[6] After the debtor filed for bankruptcy, the mortgagee completed its foreclosure action without seeking a deficiency judgment. Like New York, applicable state law required mortgagees to elect between an action at law on the note or in equity to foreclose. The mortgagee was thus precluded from bringing an action on the note and, therefore, could not enforce its claim. Nevertheless, the bankruptcy court held that the mortgagee had

standing to object to the debtor's discharge. It reasoned that although the claim was unenforceable, the underlying debt had not been extinguished and, therefore, the mortgagee remained a creditor, albeit a creditor without a remedy for enforcement. I respectfully disagree.

▮ In my view, once an obligation is entirely unenforceable under applicable law, creditor status in bankruptcy is lost. *See Davenport*, 495 U.S. at 559, 110 S.Ct. at 2131; *Vahlsing*, 829 F.2d at 567. If PCSB does not have a right to payment under state law, it cannot be a creditor in bankruptcy and, thus, lacks the requisite standing.[7]

**2. New York Foreclosure Law—The Single-Action Rule**

Article 13 of the RPAPL governs a mortgagee's right to payment in a foreclosure action. RPAPL § 1301 provides in pertinent part:

1. Where final judgment for the plaintiff has been rendered in an action to recover any part of the mortgage debt, an action shall not be commenced or maintained to foreclose the mortgage, unless an execution against the property of the defendant has been issued upon the judgment to the sheriff ... and has been returned wholly or partly unsatisfied.

. . . .

3. While [a foreclosure] action is pending or after final judgment for the plaintiff therein, no other action shall be commenced or maintained to recover any part of the mortgage debt, without leave of the court in which the former action was brought.

---

6. PCSB's Money Judgment was enforceable against the Debtors at the time they filed for bankruptcy protection. PCSB commenced its foreclosure action after the Debtors filed for bankruptcy.

7. In *Stone v. Stone (In re Stone)*, 90 B.R. 71 (Bankr.S.D.N.Y.), *aff'd*, 94 B.R. 298 (S.D.N.Y. 1988), *aff'd*, 880 F.2d 1318 (2d Cir.1989) (without opinion), the bankruptcy court, over the debtor's objection to the creditor's standing, allowed a creditor to proceed with a dischargeability action. As in this case, the creditor in *Stone* did not file a proof of claim, but was listed on the

debtor's schedules. The court concluded that the debtor's listing of the creditor on its schedule of liabilities was sufficient to establish creditor standing. This conclusion would appear to support the view that PCSB has creditor standing, since PCSB was listed as a creditor on the Debtors' schedules. In *Stone*, however, the court did not have to address the issue of whether the creditor's claim was enforceable. The debtor's liability had been established, unequivocally, in a pre-bankruptcy state court action. Thus, the court in *Stone* proceeded on the premise that an enforceable claim existed. Here, it is not yet known if the Debtors' obligation is enforceable.

N.Y.Real Prop. Acts. § 1301 (McKinney 1979).

RPAPL § 1371 governs a mortgagee's right to a deficiency judgment. It provides in pertinent part:

1. If a person who is liable to the plaintiff for the payment of the debt secured by the mortgage is made a defendant in the action, and has appeared or has been personally served with the summons, the final judgment may award payment by him of the whole residue, or so much thereof as the court may determine to be just and equitable, of the debt remaining unsatisfied, after a sale of the mortgaged property and the application of the proceeds, pursuant to the directions contained in such judgment, the amount thereof to be determined by the court as herein provided.

2. Simultaneously with the making of a motion for an order confirming the sale, provided such motion is made within ninety days after the date of consummation of the sale by the delivery of the proper deed of conveyance to the purchaser, the party to whom such residue shall be owing may make a motion in the action for leave to enter a deficiency judgment upon notice to the party against whom such judgment is sought or the attorney who shall have appeared for such party in such action. Upon such motion the court whether ... the respondent appears, shall determine ... the fair and reasonable market value of the mortgaged premises ... and shall make an order directing the entry of a deficiency judgment....

3. If no motion for a deficiency judgment shall be made as herein prescribed the proceeds of the sale regardless of amount shall be deemed to be in *full satisfaction* of the mortgage debt and *no right to recover any deficiency in any action or proceeding shall exist.*

N.Y.Real Prop.Acts. § 1371 (McKinney 1979) (emphasis added).

■ Section 1301 of the RPAPL requires holders of a note and a mortgage to choose between one of two remedies—proceed at law on the note or proceed in equity to foreclose the mortgage. The legislative intent was to provide for one action to determine a mortgagee's right to payment. *Contemporary Mortgage Bankers, Inc. v. High Peaks Base Camp, Inc. (In re High Peaks Base Camp, Inc.)*, 156 B.R. 890, 894 (N.D.N.Y.1993); *United States v. Whitney*, 602 F.Supp. 722, 730 (W.D.N.Y.1985); *see also* N.Y.Real Prop.Acts. §§ 1301(1), (3) (McKinney 1979).

■ Upon Debtors' default, PCSB commenced an action at law on the note, which culminated with entry of the Money Judgment against the Debtors. A subsequent action in equity to foreclose the mortgage would be prohibited unless the Money Judgment had been executed upon and returned unsatisfied. *See High Peaks Base Camp, Inc.*, 156 B.R. at 895; *see also* RPAPL § 1301(1). PCSB did not execute upon the Money Judgment. Rather, it moved in the court where the judgment on the note had been obtained for an order granting it leave to commence a mortgage foreclosure action.[8] Notwithstanding the prohibition against a subsequent action to foreclose the mortgage unless the Money Judgment was executed upon and returned unsatisfied, PCSB was granted leave to foreclose.

By pursuing the foreclosure action, PCSB elected its remedy. As a result of the foreclosure judgment, the Money Judgment was rendered voidable. *See Mariani v. J.K.I.F. Management*, 158 Misc.2d 938, 602 N.Y.S.2d 84, 86 (Sup.Ct.1993); *see also First Fidelity Bank, N.A. v. Best Petroleum, Inc.*, 757 F.Supp. 293, 296 (S.D.N.Y.1991) (concluding foreclosure action would be affirmative defense to pending action on note). In *Mariani*, after the mortgagee failed to obtain a deficiency judgment in the foreclosure action, it sought to enforce a money judgment entered prior to the foreclosure. The court concluded that the mortgagee's decision to pursue foreclosure estopped it from enforcing the money judgment and, thus, the mon-

---

8. It should be noted that leave of court is not required to commence a foreclosure action, even if an action on the note had been previously commenced. *See D'Agostino v. Wheel Inn, Inc.*, 65 Misc.2d 227, 317 N.Y.S.2d 472, 474 (Co.Ct. 1970).

ey judgment was unenforceable.[9] Under *Mariani*, entry of the foreclosure judgment would render PCSB's Money Judgment unenforceable.

■■■■ Unable to enforce its Money Judgment, PCSB nevertheless contends that it may pursue its claim under RPAPL § 1371, which provides that a "mortgagee may recover from the mortgagor the debt remaining unsatisfied after foreclosure, *but only* if the person liable for the payment of the debt secured by the mortgage was made a defendant in the action, and appeared or was personally served with the summons in the action." *United States v. Whitney*, 602 F.Supp. 722, 731 (W.D.N.Y.1985). Thus, assuming the Debtors had been named as defendants in the foreclosure action and appeared or were properly served, the foreclosure judgment could have awarded whatever debt remained unsatisfied. RPAPL § 1371(1).[10]

A mortgagee, however, must move for leave to enter a deficiency judgment within ninety days of the foreclosure sale. RPAPL § 1371(2). The court issuing the foreclosure judgment will then determine the deficiency amount. *Id.* Section 1371(3) further provides that if a deficiency motion is not made within the ninety day period, "no right to recover any deficiency in any action or proceeding shall exist." RPAPL § 1371(3).

In *United States v. Whitney*, 602 F.Supp. 722, 731 (W.D.N.Y.1985), a deficiency judgment was sought against the obligor who was not a party to the foreclosure proceeding. The court held that the obligor was not liable for the deficiency since the mortgagee "chose not to make [the obligor] a party to the foreclosure proceeding." *Id.* at 731. The court further stated that "[a] mortgagee waives its rights against the mortgagor on his bond by electing to foreclose without his appearance or service upon him." *Whitney*, 602 F.Supp. at 731.

It is clear that PCSB is not entitled to a deficiency judgment pursuant to RPAPL § 1371(3). The Debtors were not named nor served in the foreclosure action, nor did they appear therein. A necessary condition to obtaining a deficiency judgment pursuant to RPAPL § 1371 was not satisfied. In addition, the ninety-day statute of limitations under RPAPL § 1371(2) has expired. Therefore, PCSB may not enforce the Debtors' obligation under RPAPL § 1371(3).

### 3. Tolling of the Ninety–Day Period—11 U.S.C. § 108(c)

■■■■ PCSB next asserts that Code section 108(c) tolled the ninety-day requirement of RPAPL § 1371(2).[11] Section 108(c) provides in pertinent part:

> [I]f applicable nonbankruptcy law, an order entered in a nonbankruptcy proceeding, or an agreement fixes a period for commencing or continuing a civil action in a court other than a bankruptcy court on a claim against the debtor, ... and such period has not expired before the date of filing of the petition, then such period does not expire until the later of—
>
> (1) the end of such period, including any suspension of such period occurring on or after the commencement of the case; or

9. The court then ordered the court clerk to vacate the judgement.

10. Even if the judgement of foreclosure and sale did not provide for the deficiency, the mortgagee may be able to seek an amendment of the foreclosure judgement *nunc pro tunc. See Security Pacific Mortg. v. Herald Center Ltd.*, 731 F.Supp. 605, 609 (S.D.N.Y.1990) (granting mortgagee's request for an amendment to final foreclosure and sale judgement, which did not contain language awarding a deficiency).

11. It should be noted that even if 108(c) did toll the ninety-day period, PCSB would nonetheless

be unable to collect pursuant to RPAPL § 1371(3). Section 1371(1) requires the naming of the defendant in order to recover a deficiency judgement. *See* RPAPL § 1371(1) (McKinney 1979). The parties against whom the deficiency is sought (the Defendant/Debtors) were not named. In addition, the final judgment in the foreclosure action must award the deficiency judgement. *See Security Pacific Mortgage v. Herald Ctr. Ltd.*, 731 F.Supp. 605, 607 (S.D.N.Y. 1990). Language permitting the allowance of a deficiency was not included in the foreclosure judgement. *See Judgement of Foreclosure and Sale* (Sup.Ct. May 5, 1993) (S. Barrett Hickman).

(2) 30 days after notice of termination or expiration of the stay . . . with respect to such claim.

11 U.S.C. § 108(c).

In *In re Tyler*, 166 B.R. 21 (Bankr. W.D.N.Y.1994), the court concluded that section 108(c) only tolls statutes of limitation running at the time the bankruptcy petition was filed. *Id.* at 26. In that case the creditor obtained relief from the automatic stay and commenced a foreclosure action against the debtor. Subsequent to the foreclosure, the creditor failed to move timely for a deficiency judgment pursuant to RPAPL § 1371(3). The court held that section 108(c) does not extend the time to seek a deficiency judgment when the ninety-day period begins to run after the petition is filed. *Id.*

As in *Tyler*, the foreclosure action here was commenced postpetition. Accordingly, section 108(c) did not toll the ninety-day statute of limitations and PCSB may not bring a motion for a deficiency judgment pursuant to RPAPL § 1371(2).

### 4. Exception to the Single–Action Rule

■■ Contending that *United States v. Whitney*, 602 F.Supp. 722, 731 (W.D.N.Y. 1985) is controlling, Debtors argue that PCSB waived its right to proceed against them by commencing the foreclosure action without naming them. The *Whitney* decision, however, focussed solely on RPAPL § 1371; the court did not consider a motion for leave pursuant to RPAPL § 1301(3).[12]

Although PCSB may neither enforce its Money Judgment nor seek a deficiency pursuant to RPAPL § 1371, it may nevertheless apply to the foreclosure court, pursuant to RPAPL § 1301(3), for "leave of the court" to recover any part of the mortgage debt. If that court were to grant leave to proceed with an action on the debt, PCSB would then have the requisite creditor status.

■■ The New York courts have held that if "special circumstances" existed during the foreclosure action, and the mortgagee was unable to obtain full recovery in the foreclosure action, then the mortgagee may seek leave of the foreclosure court to recover the remaining obligation. *See Boyd v. Jarvis*, 74 A.D.2d 937, 426 N.Y.S.2d 142, 142 (1980); *Citibank, N.A. v. Covenant Ins. Co.*, 150 Misc.2d 129, 567 N.Y.S.2d 983, 985 (Sup.Ct. 1991) ("In special circumstances, the court might exercise its discretion to permit a later suit on the bond where no deficiency could be obtained in the foreclosure action."); *Stein v. Nellen Dev. Corp.*, 123 Misc.2d 268, 473 N.Y.S.2d 331, 333 (Sup.Ct.1984) ("Whether . . . leave of court should be granted to commence the separate action to recover upon the mortgage debt is conditioned upon the applicant demonstrating that special circumstances exist to justify a separate proceeding at law.").

Although considerable case law has developed with respect to when leave of court will be granted,[13] the New York courts have not determined whether special circumstances exist upon facts similar to ours. In *Manufactures Hanover Trust Co. v. 400 Garden*

---

12. A RPAPL 1301(3) motion most likely would have been denied in that case since it was undisputed that the mortgagee simply elected not to include the obligor in the foreclosure action.

13. *See Irving Trust Co. v. Seltzer*, 265 A.D. 696, 40 N.Y.S.2d 451 (1943), in which the court granted the mortgagee's request for leave to commence a separate action on the note to recover the deficiency. *Id.*, 40 N.Y.S.2d at 456. The court reasoned:

[The mortgagee] did everything to obtain relief to which it was entitled in the foreclosure action. It joined defendant as a party and prayed for a deficiency judgment in its complaint, but was precluded from obtaining such a deficiency judgment by reason of the fact that defendant could not be served within the

State of New York and, thus, when the judgment of foreclosure was entered, there was no jurisdiction in the court to provide for the awarding of a deficiency.

*Id.* at 455.

In *Stein v. Nellen Dev. Corp.*, 123 Misc.2d 268, 473 N.Y.S.2d 331 (Sup.Ct.1984), the court found special circumstances and allowed the mortgagee to proceed at law for the deficiency on the note. *Id.*, 473 N.Y.S.2d at 333–34. The court stated that the test for determining special circumstances is whether the mortgagee could "have obtained all the relief it was entitled to in the foreclosure action without the undue burden of commencing an action on the debt." *Id.* at 333. Simply because the second mortgagee could not recover the full amount owed to it in the foreclosure action, leave was granted. *Id.*

*City Assocs.,* 150 Misc.2d 247, 568 N.Y.S.2d 505, 506 (Sup.Ct.1991), the court held that the filing of bankruptcy by the mortgagor did not give rise to special circumstances as the mortgagee was not "permanently frustrated in foreclosure." *Id.* There, the mortgagee was seeking leave of court to proceed against a guarantor of the note, not the debtor. Presumably, the mortgagee in that case would have recourse against the guarantor once the bankruptcy case was closed. Here, however, because the obligor/Debtors may be granted a discharge, PCSB will be permanently frustrated if leave of court is not granted.

## 5. Determination of Special Circumstances

Acknowledging that this appears to be a case of first impression, Debtors urge this Court here to conclude that the special circumstances exception to the single-action rule does not apply. RPAPL § 1301(3) provides that if a foreclosure action is pending or a final foreclosure judgment is rendered, the mortgagee may commence an action to recover any part of the mortgage debt only upon "leave of the court in which the [foreclosure] action was brought." RPAPL § 1301(3). "[T]he aim of RPAPL Article 13 is 'to confine all proceedings to collect the mortgage debt to one court and one action.'" *Stein v. Blatte,* 118 Misc.2d 633, 461 N.Y.S.2d 189, 191 (Sup.Ct.1983).

In *Citibank N.A. v. Covenant Ins. Co.,* 150 Misc.2d 129, 567 N.Y.S.2d 983, 987 (Sup.Ct. 1991), the Rockland County Supreme Court observing "that the motion for leave should be made in the foreclosure action," nevertheless, concluded that it could determine whether special circumstances exist even though it was not the court where the foreclosure action was pending. In that case, the foreclosure action and the action to recover on the mortgage debt were before different judges of the Supreme Court, Rockland County. Although the motion for leave to sue on the note was not made in the foreclosure action, it was nonetheless made in the same court and, therefore, concurrent jurisdiction existed. Concurrent jurisdiction, however, is not present here.

The Nassau County Supreme Court declined to address a motion for leave of court in *Stein v. Blatte,* 118 Misc.2d 633, 461 N.Y.S.2d 189, 191 (Sup.Ct.1983). In that case, the foreclosure action was commenced in the Supreme Court, Suffolk County. Subsequently, plaintiffs brought an action on the note in the Nassau County Supreme Court. In dismissing the action, that court stated, "[t]o construe 'court' when used as in RPAPL § 1301(3) and as applied here to mean Supreme Court, any county, is to defy the applicable rules of construction and would frustrate the purpose underlying the legislative intent presently embodied in RPAPL Article 13." *Id.* In addition to the legislative intent, the *Blatte* court concluded that the motion for leave should be brought in the foreclosure court since that court would have "greater familiarity with [the] matter and readier access to court and other records pertinent to the dispute." *Id.*

### 6. Discretionary Abstention

▮ Notwithstanding the case law and legislative intent, Debtors urge that this Bankruptcy Court determine that special circumstances do not exist and that the state foreclosure court would not grant leave. Debtors rely on two cases holding that bankruptcy courts have jurisdiction to hear matters even though particular statutes obligate the parties to exhaust their remedies in nonjudicial forums. *See, e.g., University Medical Center v. Sullivan (In re University Medical Center),* 973 F.2d 1065 (3d Cir. 1992); *Hassett v. Federal Deposit Ins. Corp. (In re CIS Corp.),* 140 B.R. 351 (S.D.N.Y. 1992).

Although both decisions appear to allow a bankruptcy court to exercise jurisdiction when a statute clearly relegates the parties to other remedies, they are not dispositive. The Code provided an independent basis for jurisdiction in both cases. *See, e.g., University Medical Center,* 973 F.2d at 1073 (concluding issue before it arose under Bankruptcy Code § 362 and not under Medicare statute).

Debtors also rely on *Eastern Air Lines, Inc. v. International Ass'n (In re Ionosphere Clubs, Inc.),* 108 B.R. 951 (Bankr.S.D.N.Y.

1989), in which the bankruptcy court concluded that it would not abstain from exercising jurisdiction over state court actions involving the debtor. *Id.* at 956. The court declined to abstain under 28 U.S.C. § 1334(c)(1) and (2).

■■■■ Discretionary abstention by a bankruptcy court is warranted if done in the interest of justice, in the interest of comity with state courts, or in the interest of respect for state law.[14] A court may issue a *sua sponte* order, abstaining from a particular matter. *See In re Craft Architectural Metals Corp.*, 115 B.R. 423, 425–26 (E.D.N.Y. 1989). Bankruptcy courts have the authority to issue final orders concerning abstention. 1 William L. Norton, *Norton Bankruptcy Law and Procedure* § 8:5 (1994).

Although the court in *Ionosphere Clubs, Inc.* refrained from abstaining, that court was handling a complex reorganization of a national corporation and it attempted to "contain [in one] forum all matters related to the bankruptcy." *Ionosphere Clubs, Inc.*, 108 B.R. at 955. The court explained: "It is obvious, however, that the issues here, though involving violations of state law, are of transcendent concern to this Court because of its responsibilities for a financially-troubled company in reorganization." *Id.* Clearly, that rationale does not apply to this proceeding.

> In a Chapter 7 proceeding, the primary concern of the court is orderly accumulation and distribution of the assets of the estate. There is no administrative urgency or plan of reorganization to facilitate. In an adversary proceeding related to a Chapter 7 proceeding, timely adjudication can be weighed relatively lightly. By contrast, where a Chapter 11 reorganization is pending, the court must be sensitive to the needs of the debtor attempting to reorganize.... Therefore, in considering whether or not to abstain, timely adjudication necessarily weighs heavily for a Chapter 11 debtor.

*World Solar Corp. v. Steinbaum (In re World Solar Corp.)*, 81 B.R. 603, 612 (Bankr. S.D.Cal.1988).

Rather, I find persuasive the decisions in *First National Bank v. Reed*, 306 F.2d 481 (2d Cir.1962), and *Coker v. Pan American World Airways (In re Pan American Corp.)*, 950 F.2d 839 (2d Cir.1991). In *Reed*, the district court held that certain mortgages on the debtor's property were invalid under Vermont law. The Second Circuit Court of Appeals vacated that judgment and remanded the bankruptcy proceeding to the district court, directing the receiver to institute an appropriate action involving Vermont mortgage law in the Vermont courts. *Reed*, 306 F.2d at 489. Judge Friendly concluded:

> Recognizing that ... further postponement in winding up this estate is unfortunate, we still think that the expense and delay in now submitting these agreed facts to the Vermont courts, as could so easily have been done at the outset, had better be borne than that "the accident of federal jurisdiction" arising from bankruptcy should lead to an application of Vermont's regulatory statutes either more or less drastic than would have occurred in a suit ... in a Vermont court.

*Id.* The parties here have likewise stipulated to agreed facts, and any ruling thereon by this Court may not comport with the view of the New York courts on the special circumstances exception to the single-action rule.

In *Pan American Corp.*, the Second Circuit concluded that 28 U.S.C. § 1334(c)(1) was intended to codify *Thompson v. Magnolia Petroleum Co.*, 309 U.S. 478, 60 S.Ct. 628, 84 L.Ed. 876 (1940). In its discussion of *Magnolia Petroleum*, the court stated:

> *Magnolia Petroleum* involved a dispute between a trustee of a bankrupt railroad and other claimants over the right to drill for oil under the railroad's right of way. The dispositive issue of drilling rights could "be decided only by interpretation, under Illinois law, of instruments granting the railroad its right of way." Because the

---

**14.** 28 U.S.C. § 1334(c)(1) provides: "Nothing in this section prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from ab-staining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11." *Id.*

Illinois law was unsettled, the Supreme Court directed the district court to abstain in favor of state-court adjudication. Thus, *Magnolia Petroleum* and section 1334(c)(1) mandate that a federal court exercising bankruptcy jurisdiction "defer to a State court for determination of a particularly unusual question" of State law.

*Id.* at 846 (citations omitted).

As in *Magnolia Petroleum*, the state law on the issue before this Court is unsettled. Not only is it unsettled, the intent of New York State Legislature is clear—leave of court is to be granted by the court where the foreclosure action was determined. Accepting the Supreme Court's instructions that bankruptcy courts submit to state courts "particular controversies involving unsettled questions of state property law and arising in the course of bankruptcy administration," *Magnolia Petroleum*, 309 U.S. at 483, 60 S.Ct. at 630, I believe it appropriate to defer to the foreclosure court, and pursuant to 28 U.S.C. § 1334(c)(1), to abstain from deciding whether PCSB should be granted leave to commence an action at law on the note.

## CONCLUSION

Decision on Debtors' motion for summary judgment is postponed. The automatic stay is hereby modified *sua sponte* [15] to allow PCSB to seek leave of the court where the foreclosure action was concluded. PCSB must request leave of that court no later than thirty (30) days from the entry of this Decision and Order. Once the New York foreclosure court renders its decision on whether leave should be granted, and that decision becomes final and nonappealable in that forum, the parties shall notify this Court of that decision and file a copy of it. Thereafter, this Court will revisit this motion for summary judgment.

An adjourned pre-trial conference in this adversary proceeding shall be held on November 10, 1995 at 11:00 a.m.

It is SO ORDERED.

---

15. *See In re Laventhol & Horwath,* 139 B.R. 109, 116 n. 6 (S.D.N.Y.1992) (concluding bankruptcy court may, *sua sponte,* modify automatic stay to allow the litigants to proceed in another forum).