In re R. Don **THROGMARTIN**, Debtor.

No. 9:09–bk–28555.

United States Bankruptcy Court, M.D. Florida, Fort Myers Division.

Jan. 5, 2012.

Richard A. Johnston, Jr., Johnston Champeau, LLC, Fort Myers, FL, for Debtor.

### ORDER OVERRULING DEBTOR'S OBJECTION TO CLAIM NUMBER 2–1 OF SUZANNE THROGMARTIN AND GRANTING TRUSTEE'S MOTION TO DETERMINE THAT CLAIM NUMBER 2–1 OF SUZANNE THROGMARTIN IS A DOMESTIC SUPPORT OBLIGATION

(Doc. 79, 99)

BARRY S. SCHERMER, Bankruptcy Judge.

This case came on for hearing on December 6, 2011 on the Debtor's Objection to Claim No. 2–1 of his former wife, Suzanne Throgmartin ("Debtor's Objection") (Doc. 79), and the Chapter 7 Trustee's Motion to Determine that Claim No. 2–1 of Suzanne Throgmartin is a Domestic Support Obligation (the "Trustee's Motion") (Doc. 99). Creditor W. Gerald Throgmartin ("Gerald") filed a Response to the Trustee's Motion and a Limited Objection to Claim No. 2–1 (Doc. 103). Suzanne Throgmartin ("Suzanne") filed a Response (Doc. 103) and an Amended Response to the Trustee's Motion (Doc. 105). Whether Claim No. 2–1 of Suzanne is deemed a "domestic support obligation" [1] or, instead, a mere property distribution dictates whether it will be treated as a first priority claim under 11 U.S.C. § 507(a)(1)(A), or simply as a general unsecured claim.

### I. *Facts*

On January 23, 1998, after approximately 37 years of marriage, the Debtor ("Don") filed a petition for dissolution of his marriage with Suzanne in Hamilton County, Indiana. During the course of their marriage, Suzanne never worked outside the house or generated any income. Don, on the other hand, successfully developed, operated, and expanded a business, eventually taking the enterprise public. In March of 1998, Don and Suzanne entered into a "Joint Property Settlement Agreement" (the "Agreement") as part of their divorce proceeding. The Indiana state divorce court approved the Agreement on April 3, 1998. Section 5 of the Agreement sets forth the "property" to which Suzanne is entitled under the Agreement. Included in that section is a provision granting Suzanne a "marital property distribution judgment lien" in the sum of $7,490,000, which was to be payable without interest. Section 7(c) of the Agreement describes how Don is required to liquidate the marital property distribution judgment lien established in Section 5.

Section 7(c)(i) of the Agreement requires Don to make an initial payment of $81,000 to Suzanne, to be followed by additional monthly payments of $31,000 "as and for [Suzanne's] share of marital property distribution and not as income." Don is required under the Agreement to make these monthly payments to Suzanne for 20 years or the remainder of her life, whichever occurs last. Thus, if Suzanne lives past the year 2018, Don must continue making monthly payments to her for as long as she lives. The Agreement also provides that "[t]o the extent such payments after twenty (20) years are construed as income under the tax code in effect at the time, such payments shall be adjusted so that the net payment after

---

[1] The term is defined in 11 U.S.C. § 101(14A).

taxes to [Suzanne] shall not be diminished." In other words, the monthly payments may have to be increased in the future in order to ensure that Suzanne receives a monthly in-pocket payment of $31,000.

Suzanne has filed a claim in the instant bankruptcy case for $302,000 in past due payments under the Agreement. Suzanne asserts in her claim that as of January 2009, Don ceased making full monthly payments of $31,000 to her, and that as of the petition date, he is $302,000 in arrears. Suzanne also asserts that post-petition liability continues to accrue at $31,000 per month.

In addition to resolving the priority of Suzanne's claim, the Court's determination of whether Suzanne's claim is truly in the nature of a "domestic support obligation" will also affect whether the obligation is subject to discharge in this bankruptcy case, or, instead, whether it is nondischargeable under 11 U.S.C. § 523(a)(5).

## II. *Conclusions of Law*

### A. *Jurisdiction*

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334(a) and (b), and the standing order of reference from the district court. This matter is a core proceeding under 28 U.S.C. § 157(b)(2)(B). Accordingly, the Court may enter a final order resolving this matter under 28 U.S.C. § 157(b)(1).

### B. *Governing Law*

■ The Court must first determine which law to apply to resolve the Debtor's objection to Suzanne's claim. Section 14 of the Agreement contains a choice of law provision for Indiana state law to govern the Agreement. However, the issue before the Court does not pertain to an underlying contractual dispute between Don and Suzanne. For example, Don does not dispute that he owes Suzanne the money represented by her claim. Rather, the issue is solely whether Suzanne's claim itself is in the nature of support and therefore subject to priority treatment under the Bankruptcy Code. It is clear that the determination of whether a particular claim is one for support is controlled by federal bankruptcy law. *Cummings v. Cummings*, 244 F.3d 1263, 1265 (11th Cir. 2001) ("Whether a given debt is in the nature of support is an issue of federal law"); *In re Reines*, 142 F.3d 970, 972 (7th Cir.1998) ("whether or not the debt is a maintenance obligation is a matter of federal bankruptcy, rather than state, law"). Thus, the Court will apply federal law in resolving this issue.

■ Notwithstanding that federal law applies, creditor Gerald has raised an issue as to which circuit's law the Court should follow: Eleventh Circuit law (where the Debtor's bankruptcy case is pending) or Seventh Circuit law (where the parties signed the Agreement and finalized their divorce). Gerald suggests that Seventh Circuit law applies. The Court declines Gerald's invitation to apply Seventh Circuit law and will, instead, follow Eleventh Circuit precedent.

Neither Gerald nor any of the other parties in interest have advanced an explanation as to why Seventh Circuit law should apply despite the fact that the Debtor filed his bankruptcy petition in the Middle District of Florida. Presumably, the contention that Seventh Circuit law ought to apply is based on the fact that the Agreement was signed in Indiana, which is located within the Seventh Circuit's jurisdiction. Assuming this fact forms the basis for applying Seventh Circuit law, the Court finds this fact insufficient to depart from application of the law of the circuit where the case is pending.

This case is before the Court on a grant of bankruptcy jurisdiction. This is not a

diversity case in which the *Erie* doctrine would result in the application of state law. Nor is the Court persuaded that it should follow some sort of quasi-*Erie* rationale in which it would apply the law of a different circuit based on the fact that the other circuit is comprised, in part, of the state in which the Agreement was signed. *See In re Jafari*, 569 F.3d 644, 648 (7th Cir.2009) (explaining that a federal bankruptcy court's jurisdiction does not arise from diversity, but from federal bankruptcy law, which has a goal of national uniformity rather than congruence with state law, and further noting that when the Bankruptcy Code supplies the rule of law, state law is not implicated).

Here, Suzanne's claim does not present a contractual dispute that would require the Court to resort either to state law or to the law of a different forum. Rather, the narrow issue before the Court is whether the claim is in the nature of alimony or support. The issue arises under the Bankruptcy Code and, as noted above, is governed by federal law. The fact remains that Don, as the Debtor in this bankruptcy case, filed for bankruptcy in the Middle District of Florida. Accordingly, the Court will not depart from Eleventh Circuit law merely because the obligation in question was created through an agreement executed in a Seventh Circuit state.

■ Because the issue before the Court is determined by federal law, the Court will follow the axiom that bankruptcy courts must follow the law of their own circuit when rendering decisions. *In re Ritz*, 459 B.R. 623, 2011 WL 3439246 (Bankr.S.D.Tex. Aug. 4, 2011); *In re Jamuna Real Estate, LLC*, 382 B.R. 263 (Bankr.E.D.Pa.2008); *In re Petersen*, 222 B.R. 382, 385 (Bankr.M.D.Fla.1998) (Funk, J.). It also has been noted that choice of law rules do not apply to disputes governed by federal law. *See Montgomery County Maryland v. Metromedia Fiber*

*Network, Inc.*, 326 B.R. 483, 490 (S.D.N.Y. 2005). Indeed, there is a presumption that federal law is unitary on a given issue. *In re American Honda Motor Co., Inc. Dealerships Relations Litigation*, 941 F.Supp. 528, 536–37 (D.Md.1996). Whether or not this is truly the case in reality, "federal courts are competent to decide issues of federal law and should not be placed in the awkward position of having to apply the federal law of another circuit when it conflicts with their own circuit's interpretation." *See Center Cadillac, Inc. v. Bank Leumi Trust Co. of New York*, 808 F.Supp. 213, 224 (S.D.N.Y.1992). Thus, where a debtor elects to file bankruptcy in a particular district, and then raises an objection to a claim filed in that same bankruptcy case, the resolution of the claim objection will be governed by the law of the bankruptcy court's own circuit.

■ Additional reasons exist for reaching this conclusion. For example, if the Court's ruling were to be appealed, the appeal would be lodged in the district court, and any further appeal would travel to the Eleventh Circuit. From a legal perspective, the venue of appeal determines choice of law on federal issues. *E.E.O.C. v. Northwest Airlines, Inc.*, 188 F.3d 695, 700 (6th Cir.1999). Additionally, from a practical perspective, the Eleventh Circuit, as the controlling circuit with ultimate appellate jurisdiction over this matter, is in the best position to determine whether modifications to its law should be made. *See In re American Honda Motor Co., Inc. Dealerships Relations Litigation*, 941 F.Supp. at 537. Finally, the Court notes that this conclusion is consistent with the rule of law applied in situations where a case is transferred from one court to another. In such instances, the transferee court applies the law of its own circuit rather than the law of the circuit of the transferor court. *See, e.g., In re Single-*

*ton,* 269 B.R. 270, 273–74 (Bankr.D.R.I. 2001) (listing a number of cases that follow the rule that a transferee court is bound to follow the law of its own circuit). Accordingly, the Court will follow Eleventh Circuit law in its determination of whether the Suzanne's claim is in the nature of support or rather property distribution.

## C. *Applicable Federal Law*

The Bankruptcy Code defines a "domestic support obligation," in relevant part, as a debt owed to or recoverable by a former spouse, which is in the nature of alimony, maintenance, or support of such former spouse, without regard to whether such debt is expressly so designated, and which has been established before the petition date by reason of applicable provisions of a separation agreement, divorce decree, or property settlement agreement. 11 U.S.C. § 101(14A). The question before this Court is whether Suzanne's claim is "in the nature of alimony, maintenance, or support." [2]

■■■ The Eleventh Circuit has directed bankruptcy courts to focus on the intent of the parties at the time the debt or obligation was created. *See Cummings v. Cummings,* 244 F.3d 1263, 1265 (11th Cir.2001). Accordingly, courts cannot rely solely on the label ascribed to the debt and used by the parties in determining whether the obligation in question is in the nature of support. *Id.* Indeed, the very definition of "domestic support obligation" in the Bankruptcy Code does not require an express designation of the obligation as "support." *See* 11 U.S.C. § 101(14A)(B). Rather, a debt will be deemed in the na-

ture of support or alimony if, at the time of its creation, the parties intended the debt to function as support or alimony. *Cummings,* 244 F.3d at 1265.

In *Cummings,* the state court entered a final judgment of dissolution of marriage, in which it ordered the former husband to pay $5,150.00 per month in child support, together with fifteen months of rehabilitative alimony to the former wife. Additionally, although the divorce court denied the former wife's request for permanent alimony, it did order the former husband to pay the former wife $6.3 million as an "equitable distribution" in the form of three lump sum payments of $2.1 million each. Before the first $2.1 million payment became due, the former husband filed for bankruptcy. The wife then commenced an adversary proceeding, seeking to have the bankruptcy court declare the $6.3 million equitable distribution obligation nondischargeable under 11 U.S.C. § 523(a)(5) on the basis that it was in the nature of support.

The bankruptcy court concluded that the equitable distribution obligation was not in the nature of support. Rather, it found the obligation shared several characteristics with a property settlement, as distinguished from a support obligation. *Cummings,* 244 F.3d at 1265. The characteristics listed by the bankruptcy court included: (1) the obligation was not subject to death or remarriage; (2) it was payable in three lump sums rather than installments; (3) it was non-modifiable; (4) it was not enforceable through contempt proceedings; (5) the divorce court derived it

---

**2.** In fact, the Eleventh Circuit has restricted bankruptcy courts' analyses to a "simple inquiry" as to whether the debt or obligation in question can legitimately be characterized as support, i.e., whether it is in the nature of support. *In re Harrell,* 754 F.2d 902, 906 (11th Cir.1985). The Eleventh Circuit instructed that this inquiry "will usually take

the form of deciding whether the obligation was in the nature of support as opposed to being in the nature of a property settlement." *Id.* at 907. Accordingly, bankruptcy courts are prohibited from endeavoring to assess the proper level of need or amount of support to be awarded, as that task is better left to state courts. *Id.*

by equally dividing the assets and liabilities of the couple; (6) the minor children were separately awarded support of $5,150 a month; and (7) the divorce court separately awarded rehabilitative alimony. *Id.* at 1265–66.

On appeal, the Eleventh Circuit disagreed with the bankruptcy court's holding. It stated that while the factors relied on by the bankruptcy court were relevant, the critical issue was the parties' intent. *Id.* at 1266. The court went on to note that the bankruptcy court failed to account for the divorce court's intent that at least some portion of the equitable distribution obligation would function as support. *Id.* The court also recognized that because property division often achieves the same goal as a support obligation, state courts may not adhere to a rigid distinction between the two concepts. *Id.*

In its most recent pronouncement on this issue, the Eleventh Circuit held that mortgage payments which a former husband was required to make on his former wife's residence pursuant to a "property settlement agreement" constituted a "domestic support obligation." *See In re Benson*, 2011 WL 4435560 (11th Cir. Sept. 26, 2011). The *Benson* court reiterated the rule announced in *Cummings* that courts should look beyond the label given to a particular debt by the parties. The court stated that the ultimate inquiry of the bankruptcy court is whether the parties intended the obligation to function as support or alimony, "even if they called it something else." *Id.* The court then suggested that this overarching inquiry should be guided by several factors, including: "(1) the agreement's language; (2) the parties' financial positions when the agreement was made; (3) the amount of the division; (4) whether the obligation ends

upon death or remarriage of the beneficiary; (5) the frequency and number of payments; (6) whether the agreement waives other support rights; (7) whether the obligation can be modified or enforced in state court; and finally (8) how the obligation is treated for tax purposes." *Id.* at *1 (citing *In re McCollum*, 415 B.R. 625, 631 (Bankr. M.D.Ga.2009)).

In reliance on the foregoing cases, the Court must now analyze the Agreement to ascertain Don and Suzanne's intent as to the function of the marital property distribution judgment lien.

### D. Analysis of the Agreement

■ The Court concludes that the parties intended the obligation to function as support for Suzanne. While it is true, as noted by Don and Gerald, that the Agreement never expressly uses the term "alimony" or "support" in reference to Suzanne's "marital property distribution judgment lien," the mere labels (or lack thereof) affixed to an obligation are not determinative of its underlying nature.[3] *Cummings*, 244 F.3d at 1265; *see also In re Westerfield*, 403 B.R. 545, 550–51 (Bankr.E.D.Tenn.2009) (holding that an obligation created in a marital dissolution agreement was a "domestic support obligation" despite the express statement in one of the agreement's provisions that it makes no award of alimony). In fact, the complete absence of an alimony provision in the Agreement actually supports, rather than undermines, the Court's conclusion because it is inconceivable that the parties would have structured—and the divorce court would have approved—an agreement that left Suzanne, as a woman of no earning history, without a means of support. Don's position would be more tenable if

---

**3.** Likewise, the fact that the judgment lien is created in a section entitled "Wife's Property," and that the overall Agreement is labeled

as a "Property Settlement Agreement" is also not dispositive.

the Agreement contained a separate award of alimony; however, absent any provision for alimony whatsoever, the Court finds that the obligation functions to fill that void.

Additionally, the obligation is to be paid for twenty years certain, or longer (i.e., for the remainder of Suzanne's lifetime) should Suzanne live beyond the twenty-year mark. That the obligation survives beyond twenty years is indicative of the parties' intent that Suzanne be provided a means of support for her entire life. Moreover, the guaranteed minimum payment, achieved through the tax netting provision of Section 7(c)(i) of the Agreement, is designed to ensure that Suzanne receives—and can rely on receiving—the same amount of money each month. This feature, coupled with the fact that the payments are due in monthly installments over a substantial period of time (as opposed to sporadic or lump-sum payments), demonstrates that the parties intended to provide Suzanne with a means of regular support.

It is probable that neither the parties nor the divorce court envisioned Don filing for bankruptcy nearly twelve years after the Agreement was executed, and, consequently, did not feel compelled to delineate support from property distribution, especially given that both concepts can effectively serve the same function. *See Cummings*, 244 F.3d at 1266. Furthermore, under Indiana law, property distribution settlements approved as part of a marital dissolution, unlike spousal maintenance, are not modifiable by the court unless both parties consent or there is fraud, undue influence, or duress. *Johnson v. Johnson*, 920 N.E.2d 253 (Ind.2010). This rule of law likely explains why the parties structured the Agreement as they did (i.e., to ensure that Suzanne would receive regular, guaranteed support). It also dispenses with Don's argument that because the

obligation is non-modifiable, it should be treated as a mere property distribution.

Applying the factors referenced in *Cummings* and *Benson*, the Court finds that many of the enumerated factors result in a finding that Don's obligation to Suzanne is in the nature of support. First, with respect to the language of the Agreement, the complete absence of a separate award of alimony leads the Court to conclude that the Don's obligation to Suzanne was intended to function as support. Second, it is undisputed that there was a significant disparity between Don and Suzanne's respective financial positions and earning power when the Agreement was signed. Third, the obligation continues for as long as Suzanne remains alive, indicating that it was meant to provide a basis for continuing support. Fourth, the payments are made in regular, monthly installments over a long period of time, thereby demonstrating an intention to provide a steady stream of income to Suzanne rather than to provide a one-time, lump-sum property distribution. Fifth, given that Indiana law allows "property distributions" to be modifiable only in limited circumstances, Suzanne had an incentive to use the label of property distribution as opposed to spousal support. Accordingly, the Court is not persuaded—either by the label used or by the fact that the obligation may not be modifiable or enforceable through contempt proceedings—that the obligation is not, in reality, in the nature of support.

### III. *Conclusion*

For the foregoing reasons, the Debtor's objection to Suzanne's claim (Doc. 79) is overruled, as is creditor W. Gerald Throgmartin's Limited Objection (Doc. 103). The Chapter 7 Trustee's Motion to Determine that Claim No. 2–1 of Suzanne Throgmartin is a Domestic Support Obligation (Doc. 99) is granted. Suzanne's

claim (Claim No. 2–1) is allowed as a priority allowed claim for a domestic support obligation.